IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CARL A. JACOBSON,<br><br>    Plaintiff,<br><br>vs.<br><br>UTAH DEPARTMENT OF CORRECTIONS, et al.,<br><br>    Defendants. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:04CV739DAK |

    This matter is before the court on Defendants' Motion for Summary Judgment. The court previously dismissed all claims against the Utah Department of Public Safety, Richard Burt, Scott Carver, and Clint Friel. The remaining Defendants are the Utah Department of Corrections, Mike Chabries, and Scott Mann. The court held a hearing on Defendant's motion on April 4, 2006. Plaintiff was represented by Russell Monahan and Defendants were represented by Akiko Kawamura. Having fully considered the motions and memoranda submitted by the parties and the facts and law relevant to this motion, the court enters the following Memorandum Decision and Order.

## BACKGROUND

    On April 14, 2001, Plaintiff was assigned as an Institutional Disciplinary Hearing Officer with the Utah Department of Corrections ("DOC"). He continued to work with the DOC until he

was terminated on June 24, 2003.

For a period of nine months, Jacobson's direct supervisor was Richard Burt. Jacobson and Burt argued frequently. Jacobson claims that Burt made repeated religious comments in the office, including: telling Jacobson that he needed to repent; and telling Jacobson, while holding a binder containing emails and other documents, that when Jacobson is brought forth for judgment, Burt will be there to testify; expressing concern for Jacobson's eternal salvation.

Jacobson made several verbal complaints to Friel and Chabries regarding Burt's religious statements and, in September 2001, filed a formal complaint with DOC alleging harassment. In October 2001, DOC filed a notice of intent to terminate Jacobson for abandonment of post. DOC later abandoned this effort to terminate Jacobson. However, on October 22, 2001, Plaintiff was placed on a continuing corrective action plan ("CAP") by Burt and Friel.

On November 13, 2001, Jacobson met with Chabries regarding his complaints. At this meeting, Jacobson was assured by Chabries that his complaints would be fully investigated. In about mid-November 2001, Chabries purportedly instructed Carver to investigate Jacobson's complaints regarding Burt's actions. Jacobson alleges that DOC did not reveal to him that Carver was investigating himself, nor did DOC inform Jacobson that an investigation was initiated or completed.

On February 11, 2002, Burt and Friel signed off on Jacobson's satisfactory completion of his CAP and Jacobson's plan evaluation. On February 19, 2002, Jacobson emailed Chabries requesting that his September 25, 2001 complaint be investigated. The next day, Chabries emailed Jacobson that his complaint had been investigated by Carver. On February 27, 2002, Jacobson expressed bewilderment that Chabries would instruct Carver to investigate himself.

Jacobson again requested an investigation into his allegations. On February 28, 2002, Chabries informed Jacobson that an outside investigator would be used to investigate Jacobson's allegations. Scott Mann, an employee of the Utah Department of Safety, did the investigation.

On March 3, 2002, Burt requested that Jacobson be terminated because of time management issues and a failure to comply with supervisors directives. Sometime in March 2002, DOC instituted a second termination proceeding against Jacobson. Six months later, on September 3, 2002, DOC reassigned Jacobson to a secretarial post with Adult Probation and Parole.

On March 17 through March 19, 2003, a hearing on Jacobson's termination was held before Hearing Officer Richard Catten. Jacobson alleges that DOC was improperly allowed to introduce evidence in violation of his due process rights. On May 26, 2003, Catten issued a hearing report upholding the DOC's decision to terminate Jacobson. Jacobson alleges that Catten's hearing report was deficient in several respects.

Jacobson appealed Catten's decision to Chabries, and Chabries issued a Final Report on June 24, 2003, terminating Jacobson. The DOC's articulated reasons for Jacobson's discharge included time management problems, difficulty following supervisor's directives regarding work schedule, overtime, attendance, and training, and attendance problems.

Jacobson alleges that the appeal to Chabries was in violation of his due process rights because Chabries should have recused himself as the decisionmaker because he was already involved in the case, Chabries used procedures that were against Utah statute and administrative regulations, Chabries considered issues on appeal without prior notice to Jacobson, and Chabries used the wrong evidentiary standard.

At the same time that he began the process for filing this lawsuit, Jacobson filed a grievance with the Career Service Review Board ("CSRB").  On August 30, 2004, through September 1, 2004, a Step 5 evidentiary hearing was conducted before a CSRB hearing officer, at which Jacobson was represented by counsel.  The hearing officer upheld Jacobson's dismissal and entered findings of fact and conclusions of law.  Jacobson appealed the Step 5 decision and order.  After a Step 6 hearing, the CSRB overturned the hearing officer's decision.  The CSRB found that there was no evidence on the record of substantial misconduct by Jacobson after he completed his corrective action plan.  The CSRB reinstated Jacobson's employment with the DOC, granted $40,824.10 in back pay, and retroactively restored all of his benefits.

Jacobson returned to work on October 31, 2005.  He then elected to resign with full retirement effective December 15, 2005.

## DISCUSSION

Jacobson has Title VII claims for religious discrimination and retaliation against DOC and a Section 1983 due process claim against Defendants Scott Mann and Mike Chabries. Defendants move for summary judgment on each of these claims.

**1. Due Process Claim**

As an initial matter, Defendants argue that the CSRB's decision to fully reinstate Jacobson and award back pay and benefits caused his due process claim to become moot because Jacobson cannot continue to claim that he has been deprived of any property right in his employment.  Jacobson argues that reinstatement does not moot his due process claim because the merit system is inadequate to rectify the due process violations at the administrative level.

Jacobson argues that he cannot be awarded attorneys' fees through the CSRB, and, as

such, the remedies provided by the CSRB are inadequate to make him whole.  Jacobson, however, does not have a due process right to attorneys' fees that he incurred at the CSRB.  Because he has been fully reinstated with respect to pay and benefits, his relief is full.  Jacobson also contends that because there remain outstanding issues with respect to back pay, his request for damages remains a live controversy.  But Jacobson's disputes as to the amount of proper back pay will be resolved by the CSRB, not this court.  The court, therefore, agrees that the due process claim is moot.

However, to the extent that Jacobson's due process claim could be considered a live controversy, the court finds that there was no due process violation.  This court has already found that Jacobson had no procedural due process claim with respect to the pre- and post-termination process.  Jacobson claims that not only was he entitled to procedural due process, he was also entitled to the substantive component of due process as well—the right to be free from arbitrary and capricious actions by the state.  To support this contention, Jacobson argues that Mann withheld or destroyed evidence which formed the basis for an "Investigative Report" that was relied on by DOC in terminating Jacobson, and that Chabries made several errors in making his determination to terminate Jacobson.

There is no evidence that the pre-termination process was a "sham" as alleged by Jacobson.  Jacobson was given a three-day hearing at which he was represented by counsel.  Ten witnesses were examined and cross-examined, and sixty-five exhibits were introduced.  The parties were allowed to file post hearing supplemental briefs.  The hearing officer considered all of this evidence and entered an order upholding the DOC's recommendation of termination.  Chabries' decision to terminate Jacobson only affirmed the hearing officers's recommendation of

termination.  Jacobson's assertions that Chabries may have considered issues he was unaware of or that he used the wrong standard would constitute, at most, negligence, not a knowing deprivation of Jacobson's rights.

In addition, the evidence Jacobson relies on to claim that Mann withheld or destroyed evidence is Mann's testimony that he took notes on his Palm Pilot and he did not know if the notes were still on the shared directory or not.  The testimony does not suggest that the investigation was a sham.  At most, there was negligence in keeping track of all of the notes that were used to compile Mann's investigative report.  However, there is no suggestion as to how those notes would have changed the content of the investigative report.  And, Jacobson does not allege how these notes would have changed or influenced the decision to terminate him.

Chabries and Mann are entitled to qualified immunity.  There is no evidence that Mann or Chabries did anything that was outside of their regular duties.  There is also no evidence supporting Jacobson's assertion that there was a conspiracy to deprive him of his constitutional rights.  Jacobson's disagreement with the investigative report, the outcome of the hearing, and the appeal to Chabries is not enough to establish a constitutional violation.  Jacobson has failed to provide any factual support for his conclusory allegations of a substantive deprivation of his due process rights.  The court, therefore, dismisses the due process claims against Defendants Mann and Chabries.

**2. Hostile Work Environment Claim**

Defendants next contend that the hostile work environment claim fails as a matter of law because Jacobson cannot establish that there was severe and pervasive discriminatory conduct. In his testimony before the CSRB, Jacobson identified two incidents of what he considered to be

religious harassment by Burt. Discriminatory conduct results in a hostile work environment when it is "so severe or pervasive that it create[s] a work environment abusive to employees because of their race, gender, religion, or national origin." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22-24 (1993). "This standard requires an objectively hostile or abusive environment." *Id.*

Considering the facts objectively, the statements were religious in nature and were inappropriate in a work setting. Nonetheless, the court must consider whether they were abusive and pervasive. The standard in this area of the law is quite high. Jacobson has identified only two incidents. Although two particularly egregious statements could possibly reach the level of harassment, these statements do not appear to be abusive or pervasive. Jacobson testified that although Burt commented that he was concerned about his eternal salvation, he did not actually feel that his salvation was in jeopardy. Although the two comments were obviously annoying to Jacobson, they do not rise to the level of harassment. The court concludes that no reasonable jury could find that the two statements were so offensive and pervasive that they rise to the level of a hostile environment. Therefore, Jacobson's hostile work environment claim fails as a matter of law.

**3. Retaliation Claim**

Defendants argue that there is no evidence upon which a reasonable trier of fact could rely to conclude that either the CAP or termination of Jacobson were retaliatory. First, Defendants contend that Jacobson cannot establish a prima facie case of retaliation. For purposes of this motion, DOC would concede that Jacobson engaged in protected conduct when he complained to Friel about Burt's religious comments. And Defendants concede that Jacobson was disadvantaged by DOC's decision to terminate him. Defendants, however, assert that

Jacobson cannot establish the last element of a prima facie case of retaliation – that there was a causal nexus between Jacobson's complaints about religious harassment and the initiation of his CAP or the termination of his employment.

DOC contends that it is undisputed that Jacobson had been placed on the CAP before he complained about Burt's religious comments.  However, Jacobson asserts that he made several verbal complaints to Friel and Chabries regarding Burt's religious harassment and filed his formal complaint with DOC concerning the harassment in September 2001.  He claims that in October 2001, DOC then filed a notice of intent to terminate him for abandonment of post.  Although DOC later abandoned this effort to terminate Jacobson, it placed Jacobson on a continuing corrective action plan ("CAP") on October 22, 2001.

Furthermore, with respect to the termination proceedings, Jacobson claims that he emailed Chabries on February 19, 2002, requesting that his September 25, 2001 complaint be investigated.  A month later, in March 2002, DOC instituted a second termination proceeding against Jacobson even though he had just successfully completed his CAP the month before.  Because of the timing of the actions against Jacobson in relation to Jacobson's complaints, the court finds that there is a question of fact as to whether DOC's actions with respect to the CAP and termination were motivated by Jacobson's complaints.

Even if Jacobson could establish a prima facie case, DOC argues that he cannot establish that the DOC's articulated reason for discharging him is pretextual.  DOC's articulated reason for Jacobson's discharge was that he had difficulty following his supervisor's directives regarding work schedule, overtime, attendance, and training.  DOC argues that Jacobson had excessive absences during his employment.  For example, during 2001, Jacobson was allegedly

8

absent from work for approximately 835 hours.  However, Jacobson completed his Cap in 2002.  And, the CSRB panel reinstated Jacobson because there was insufficient evidence of new or continuing misconduct after Jacobson's completion of the CAP.   The termination proceedings occurred after the completion of Jacobson's CAP.  Given the timing with respect to the institution of termination proceedings in relation to Jacobson's complaints and the CSRB's finding that no serious misconduct occurred after the completion of the CAP, the court concludes that a jury could find that the stated reasons for Jacobson's termination were a pretext for retaliation.  Therefore, DOC's motion for summary judgment on the retaliation claim is denied.[1]

## CONCLUSION

Based upon the above reasoning, Defendants' Motion for Summary Judgment is GRANTED IN PART AND DENIED IN PART.  Defendants' motion is granted with respect to Plaintiff's due process claim against Defendants Chabries and Mann and Plaintiff's hostile work environment claim against DOC.  Defendants' motion is denied with respect to Plaintiff's retaliation claim.

DATED this 18th day of April, 2006.

BY THE COURT:

*Dale A. Kimball*
DALE A. KIMBALL
United States District Judge

---

[1] Although the court has dismissed Jacobson's hostile work environment claims, the statements Burt made to Jacobson will be relevant to and admissible in relation to Jacobson's retaliation claim at trial.